Dionne M. SCOGGINS, As Administrator of the Estate of Chad J. Schleicher, Deceased, Appellant,

v.

WAL–MART STORES, INC., Appellee.

No. 95–512.

Supreme Court of Iowa.

March 26, 1997.

Stephen J. Powell and Samuel C. Anderson of Swisher & Cohrt, P.L.C., Waterloo, for appellee.

Charles C. Brown, Jr. of Tom Riley Law Firm, P.C., Cedar Rapids, for appellant.

Considered by LARSON, P.J., and NEUMAN, SNELL, ANDREASEN, and TERNUS, JJ.

SNELL, Justice.

This further review of our Iowa Court of Appeals decision involves the claim by Dionne M. Scoggins, as administrator of the estate of Chad J. Schleicher, that defendant, Wal–Mart Stores, Inc., is legally responsible for the death of Chad Schleicher. The district court directed a verdict for defendant; the court of appeals affirmed. We affirm the decision of the court of appeals and the judgment of the district court.

## I. Facts and Procedural Background

On March 6, 1993, twenty-year-old Chad Schleicher shot himself with a gun owned by his girlfriend and loaded with ammunition he had purchased earlier that day from a Wal–Mart store in Waterloo. The suicide occurred after Schleicher had an argument with his fiancee, Lisa Van Dorn, during which Chad assaulted her and left her residence in his car. Van Dorn called police and reported the assault. She gave police a description of the vehicle Chad was driving and indicated that he carried a handgun underneath the driver's seat. Waterloo police soon located Chad's vehicle and followed him to his grandmother's driveway. After the officers exited their cars and took protective cover with their guns drawn, they heard a gun shot. An investigating officer approached the vehicle to find Chad's head bleeding and a gun in his lap. Chad died the following day as the result of the self-inflicted gunshot wound.

The administrator of Chad's estate, appellant Dionne Scoggins, filed suit against Wal–Mart alleging it negligently sold ammunition to a minor and that this negligence was a proximate cause of Chad's suicide. The matter proceeded to a jury trial. Wal–Mart stipulated that it sold the ammunition to Chad and the court took judicial notice of 18 U.S.C. § 922 (1991), which prohibits the sale of ammunition to persons under the age of

twenty-one. At the close of all the evidence, the court granted Wal–Mart's motion for a directed verdict. The court found the estate failed to prove that Wal–Mart's alleged negligence in selling the ammunition to a minor was a proximate cause of Chad's suicide. It also found, as a matter of law, that Chad's intentional act of suicide was a superseding cause of death.

Plaintiff appealed the order and the Iowa Court of Appeals, sitting en banc, affirmed the ruling of the district court. The court found, with two judges dissenting, that there was insufficient evidence establishing proximate cause because Chad's suicide was not foreseeable. The court also found that the suicide was a superseding cause, thus relieving Wal–Mart of liability. Scoggins sought and we granted further review of the court of appeals decision.

## II. Standard of Review

We review a trial court's grant of a motion for directed verdict for correction of errors of law. Iowa R.App. P. 4; *Lawrence v. Grinde*, 534 N.W.2d 414, 418 (Iowa 1995). We view the evidence in the light most favorable to the nonmoving party and afford the nonmovant every legitimate inference that we can reasonably deduce from the evidence. Iowa R.App. P. 14(f)(2); *Lawrence*, 534 N.W.2d at 418. We must determine whether reasonable minds could differ on the issue presented, and if such is the case, a jury question exists and the grant of directed verdict was inappropriate. *Lawrence*, 534 N.W.2d at 418.

## III. Issues on Appeal

### A. Proximate Cause

Although questions of negligence and proximate cause are ordinarily for the jury to decide, they may be decided as matters of law in exceptional cases. Iowa R.App. P. 14(f)(10); *Ruden v. Jenk*, 543 N.W.2d 605, 607 (Iowa 1996); *Beeman v. Manville Corp. Asbestos Disease Comp. Fund*, 496 N.W.2d 247, 254 (Iowa 1993).

We recently reviewed the development of the definition of causation as an

element of tort under Iowa law and summarized the requirements as follows:

> [U]nder any definition of causation, this element has two components: (1) the defendant's conduct must have *in fact caused* the plaintiff's damages (generally a factual inquiry) and (2) the policy of the law must require the defendant to be *legally responsible* for the injury (generally a legal question).

*Gerst v. Marshall*, 549 N.W.2d 810, 815 (Iowa 1996).

In conducting the factual inquiry, we look to two components: (1) whether the harm would not have occurred *but for* the negligence of the defendant, and (2) whether the negligence of the defendant was a substantial factor in bringing about the harm. *Id.* at 817. This inquiry has been referred to as a determination of proximate cause. *Id.* at 815. In *Gerst* we said:

> It is sufficient here to observe that despite the various terms used to state the causation analysis, we have consistently required a plaintiff to meet the traditional but-for test of causation in fact. We agree with the Missouri Supreme Court when it stated:
>
>> "[but] for" is an absolute minimum for causation because it is merely causation in fact. Any attempt to find liability absent actual causation is an attempt to connect the defendant with an injury or event that the defendant had nothing to do with. Mere logic and common sense dictates that there be some causal relationship between the defendant's conduct and the injury or event for which damages are sought.

*Id.* at 817–18 (quoting *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 860–62 (Mo. 1993)).

Regarding the second element of causation, we have said:

> Proximate causation presents the question of whether the policy of the law will extend responsibility to those consequences which have in fact been produced by an actor's conduct. The general rule is that an actor's conduct is the proximate or legal cause of harm to another if (1) his conduct is a "substantial factor" in bringing about the harm and (2) there is no other rule of law relieving the actor of liability because of the manner in which his negligence resulted in the harm.

*Kelly v. Sinclair Oil Corp.*, 476 N.W.2d 341, 349 (Iowa 1991) (citations omitted).

In the case at bar, there is no dispute concerning the "but-for" component. Wal–Mart admits it sold ammunition to Chad and that he used that same ammunition to kill himself. Negligence by Wal–Mart is established by the sale in violation of 18 U.S.C. § 922. The critical determination is whether Wal–Mart's conduct was a substantial factor in bringing about Chad's death, and if so, whether public policy demands that Wal–Mart be held liable. If this question is answered in the negative, then Wal–Mart is relieved of liability. As we have noted:

> If an actor's conduct is not a substantial factor in bringing about the plaintiff's harm, or if it is a substantial factor but is superseded by later forces or conduct, then the actor's conduct does not constitute the legal cause of the plaintiff's harm.

*Smith v. Shaffer*, 395 N.W.2d 853, 857 (Iowa 1986) (citing *Schnebly v. Baker*, 217 N.W.2d 708, 729 (Iowa 1974)).

We have previously stated that in determining whether conduct meets the substantial factor test, we look to the "proximity and foreseeability of the harm flowing from the actor's conduct, although it is not necessary that the actual consequences of a defendant's negligence should have been foreseen." *Kelly*, 476 N.W.2d at 349; *State v. Ayers*, 478 N.W.2d 606, 608 (Iowa 1991) ("Proximate cause is based on foreseeability."); *see also* Restatement (Second) of Torts §§ 433, 435 (1965). Thus, in order to find Wal–Mart liable for Chad's death, the suicide must have been foreseeable to Wal–Mart when it sold the ammunition.

There is no indication in the record, however, that the clerk who sold the ammunition had any reason to believe that Chad was suicidal or that he intended to use the ammunition to injure himself. Although Wal–Mart was clearly negligent in selling the ammunition to a minor, there is insufficient

evidence to prove that this negligence was the proximate cause of Chad's death. This determination is consistent with other jurisdictions that have considered this issue.

### 1. Other Jurisdictions

In *Drake v. Wal–Mart, Inc.*, 876 P.2d 738 (Okla.App.1994), Wal–Mart sold a handgun to a nineteen year old who later committed suicide. Summary judgment was granted to the defendant by the Oklahoma Court of Appeals. The court observed, "[An] illegal sale of an instrumentality which could be used for suicide cannot create liability where the seller had no reason to expect that instrumentality to be used for that purpose." *Drake*, 876 P.2d at 741 (citing *Runyon v. Reid*, 510 P.2d 943, 950 (Okla.1973)). The *Runyon* case involved a pharmacist who, in violation of an Oklahoma statute, refilled a non-refillable prescription which was used by the purchaser to commit suicide. The Oklahoma Supreme Court stated: "[W]e conclude that if decedent willfully committed suicide, knowing the physical effect of his act, such act constituted an independent intervening cause and [defendant's] negligence was not the proximate cause of decedent's death." *Runyon*, 510 P.2d at 949.

The Indiana Court of Appeals, in *Riesbeck Drug Co. v. Wray*, 111 Ind.App. 467, 39 N.E.2d 776 (1942), decided a case in which the decedent father asked his eight-year-old son to purchase a small bottle of carbolic acid. An employee of Riesbeck Drug Co. supplied the bottle to the eight year old who took it home to his father, who subsequently drank it and died. The plaintiff's estate alleged that the defendant was negligent in placing a bottle of carbolic acid in the hands of an eight year old who did not understand the dangerous nature of the product. The court stated:

> Death by self-destruction is not a result naturally and reasonably to be expected, solely, from the sale of substances or instrumentalities with which human life can be taken. Such instrumentalities and substances would cover a great variety of objects. A purchaser of gasoline might place the same in a motor and create carbon monoxide for self-destruction. A fa-

ther might send his son, who is an infant, to a store to purchase a can of kerosene and use the same for self-destruction, yet we would not say that the act of the seller was the proximate cause of the death where there was nothing in the conditions and circumstances connected with the sale to indicate that the substance would be used by another for self-destruction.

*Riesbeck Drug Co.*, 39 N.E.2d at 781. The Indiana Court of Appeals held that a jury verdict for the plaintiff was contrary to law in that there ‑was insufficient evidence to show that the alleged negligence was a proximate cause of the death. *Id.*

The case of *Chapman v. Oshman's Sporting Goods, Inc.*, 792 S.W.2d 785 (Tex.App. 1990), involved the wrongful death action against a sporting goods store that sold a pistol to a minor that was ultimately used in a murder. The record before the court was devoid of any evidence suggesting that there was anything that the purchaser said or did, or anything in his behavior or demeanor, that would have placed the store or its employees on notice that the purchaser would engage in criminal conduct if he possessed the gun. In affirming the defendant's summary judgment, the court held that the evidence did not establish the foreseeability of the criminal conduct by the person who purchased the pistol from the store employee.

> For this court to find from the summary judgment evidence in this record that a fact issue exists as to the foreseeability of Buede's criminal conduct, we would be paving the way for a rule of strict liability for gun retailers no matter how attenuated the criminal conduct is from the sale of the gun. We decline to do so.

*Chapman*, 792 S.W.2d at 788.

The Tennessee Court of Appeals reached the same result in considering a wrongful death action against a seller of ammunition to a minor. The minor then accidentally shot and killed a friend. *Fly v. Cannon*, 836 S.W.2d 570 (Tenn.App.1992). That court stated:

> "An injury that is the natural and probable consequence of an act of negligence is actionable, and such an act is the proximate cause of the injury. But an injury which

could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable and such an act is either the remote cause, or no cause whatever, of the injury."

*Id.* at 574 (quoting *Moody v. Gulf Refining Co.,* 142 Tenn. 280, 218 S.W. 817 (1920)).

The Mississippi Supreme Court affirmed a directed verdict for a defendant store that sold a pistol and ammunition to a minor who used them in a murder. *Robinson v. Howard Bros. of Jackson, Inc.,* 372 So.2d 1074 (Miss.1979). The court stated:

> The question of foreseeability is important in our case because there is less reason to anticipate premeditated and malicious acts as opposed to acts which are merely negligent. A clear statement on the question of foreseeability appears in Prosser's, *Law of Torts,* 4th Ed. pp. 173, 174 where the author states:
>
>> There is normally much less reason to anticipate acts on the part of others which are malicious and intentionally damaging than those which are merely negligent; and this is all the more true where, as is usually the case, such acts are criminal. Under all ordinary and normal circumstances, in the absence of any reason to expect the contrary, the actor may reasonably proceed upon the assumption that others will obey the criminal law.

*Id.* at 1076. These cases from other jurisdictions are in accord with the development of our tort law in this area.

### 2. Iowa Case Law

In *State v. Ayers,* a defendant stole a handgun and subsequently sold it to a minor, in violation of Iowa Code section 724.22 (1989). *Ayers,* 478 N.W.2d at 607. The minor then accidentally shot and killed his girlfriend with the weapon. Ayers was convicted of involuntary manslaughter for his role in the girl's death. In reversing Ayers' conviction, we determined that although his conduct was reckless, there nevertheless was a failure to show that his act was a proximate cause of the girlfriend's death. We noted: "It is not enough that Ayers' conduct was outrageous and criminal. A more direct and specific foreseeability was required." *Id.* at 608.

Appellant attempts to distinguish *Ayers* on the ground that it involved a criminal sanction, as opposed to civil liability. But we have consistently noted that proximate cause has the same meaning in both criminal and civil cases. *See State v. McFadden,* 320 N.W.2d 608, 613 (Iowa 1982) ("Defendant has suggested no specific policy differences, nor can we think of any, that would justify a different standard of proximate causation under our involuntary manslaughter statute than under our tort law"); *State v. Marti,* 290 N.W.2d 570, 584 (Iowa 1980) ("The basic perspectives of proximate cause ... [are] the same in both civil and criminal cases.").

Similarly, in *Poland v. Earhart,* the defendant sold a revolver to a fifteen-year-old boy, which was a misdemeanor under Iowa law at the time. *Poland v. Earhart,* 70 Iowa 285, 30 N.W. 637 (1886). The minor then accidentally shot himself in the hand, causing permanent disability. In denying his parents' claim for damages, we said:

> The immediate cause of these injuries was not the sale of the weapon by defendant, but the accident which subsequently occurred while the boy was handling it, whereby he was wounded. If plaintiff has a cause of action ... it must be founded on the fact that the accident ... might reasonably have been anticipated by the defendant as a consequence of the sale of the weapon to him.... It is not alleged that [the minor] was ignorant of the character of the weapon sold him; or that he was inexperienced in the use of such weapons; neither is it shown there was anything in his character or disposition that rendered it dangerous to place a weapon of that kind in his hands.

*Id.* at 287, 30 N.W. at 637–38.

Although *Poland* was decided at a time when firearms-related violence was not as prevalent as it is today, we nevertheless do not believe that its reasoning is outdated. Based on our analysis of the elements required to prove proximate cause and the cited authorities, we hold that proof of the proximate cause of death in the case at bar

has failed because the conduct of Wal–Mart was not a substantial factor in bringing about the harm to decedent.

### B.  Intervening or Superseding Cause.

■ Both the district court and the court of appeals found that, in addition to a failure to prove proximate cause, Wal–Mart was not liable because of the existence of an intervening or superseding cause. That cause was the act of suicide by Chad Schleicher. We have described intervening or superseding acts as follows:

> When conduct or forces occur after an actor's conduct, however, the actor may be relieved of liability if a court finds that the later-occurring event is such as to break the chain of causal events between the actor's negligence and the plaintiff's injury. This is so even when the actor's conduct is a cause-in-fact of the plaintiff's harm.

*Kelly,* 476 N.W.2d at 349; *see also Marti,* 290 N.W.2d at 585.

■ In *Kelly,* we held that a superseding cause existed to relieve a negligent defendant of liability for illegal sale of alcohol in the subsequent negligent entrustment and operation of a truck by third parties. *Kelly,* 476 N.W.2d at 352. We also found that a third party's conduct was not a superseding cause in *Iowa Electric Light & Power Co. v. General Electric Co.,* 352 N.W.2d 231 (Iowa 1984). There we said:

> A determination of whether another person's conduct constitutes a superseding cause is usually a question of fact, and it is a question of law only in extreme circumstances where it is manifestly clear that the intervening conduct was a superseding event. We will not reverse such a determination if it is supported by substantial evidence. Moreover, an intervening act or force will not relieve a negligent defendant of liability if that act or force was a normal consequence of the defendant's conduct or was reasonably foreseeable by that defendant.

*Iowa Elec. Light & Power Co.,* 352 N.W.2d at 235 (citations omitted).

In *Iowa Electric,* we identified factors from section 442 of the Restatement (Second) of Torts to consider in determining whether an intervening act or force constitutes a superseding cause. *Id.* Three of these factors have application to the case at bar. They are:

> a.  The fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;
>
> b.  The fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;
>
> c.  The fact that the intervening force is operating independently of any situation created by [the] actor's negligence, or, on the other hand, is or is not a normal result of such a situation.

*Id.* (quoting Restatement (Second) of Torts § 442).

■ In the case at bar, Chad was both the victim and the instigator of the intervening act that caused his death. Neither result was factually indicated to the defendant, Wal–Mart, when it negligently sold the ammunition to Chad. Chad's suicide was not a normal consequence of Wal–Mart's conduct and was not reasonably foreseeable by Wal–Mart. The Restatement factors cited from section 442 support this determination. The intervening act of suicide by Chad was a superseding cause, as a matter of law, that relieves Wal–Mart from liability for the negligent sale of ammunition to him.

### C.  Policy Considerations

■ Appellant correctly notes that proximate cause does not require the actual consequences of the decedent's act to be foreseeable, but only that some injury be foreseeable. *See Kelly,* 476 N.W.2d at 349; *Sumpter v. City of Moulton,* 519 N.W.2d 427, 435 (Iowa App.1994). She contends that the enactment of 18 U.S.C. § 922, which prohibits the sale of ammunition to persons under the age of twenty-one, evinces a legislative recognition that there is a foreseeable risk of harm if ammunition is sold to minors. Thus, according to the appellant's analysis, the violation of the fed-

eral statute would present sufficient evidence to generate a jury question.

Although we agree that the enactment of the federal statute reflects Congressional concern with the inherent danger of such conduct, we nevertheless do not agree that this fact alone requires that Wal–Mart be found liable or that there is even sufficient evidence to send the question to the jury. As we noted in *Poland,* "It cannot be said that defendant might reasonably have anticipated that an accident would occur from the handling of a weapon from the fact alone that the person to whom he sold it was a minor." *Poland,* 70 Iowa at 287, 30 N.W. at 638.

It is significant that neither the federal nor the state legislatures have decided to impose strict liability for violation of statutes prohibiting sale of ammunition or firearms to minors. In other contexts, the legislature has clearly provided that a violation of the applicable statute results in strict liability, regardless of questions of causation. *See, e.g.,* Iowa Code § 123.92 (dramshop law imposing strict liability for sale of alcohol to intoxicated persons). To hold, in this case, that a defendant would be liable for any injury that is somehow related to the sale of ammunition to a minor would be an impermissible imposition of strict liability via judicial fiat.

The decision of the court of appeals is affirmed; judgment of the district court is affirmed.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**